UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SINCLAIR M. FABOR,

                    Plaintiff,

    v.                                              **DECISION AND ORDER**

                                                        19-CV-1573S

NIAGARA    FRONTIER    TRANSPORTATION
AUTHORITY,

                    Defendant.

## I.    Introduction

Before this Court is a Title VII, 42 U.S.C. §§ 2000e to 2000e-17, employment discrimination and retaliation action wherein an African American former employee claims he was terminated by Defendant Niagara Frontier Transportation Authority ("NFTA" or the "Authority") based on his race and retaliated against for lodging complaints.

This is the second action arising from Plaintiff's employment with the Authority, see Fabor v. Niagara Frontier Transportation Auth, No. 18CV1463 (hereinafter "Fabor, No. 18CV1463"; the present action will be cited by docket entries). In Fabor, No. 18CV1463, Plaintiff alleged violations of Title VII and Age Discrimination in Employment Act for discipline NFTA imposed upon Plaintiff. That case was dismissed without prejudice on stipulation during the pendency of this action, Fabor, No. 18CV1463, Docket No. 5 (Notice of Voluntary Dismissal, Dec. 16, 2020).

In the present action, Plaintiff alleges that he was wrongfully removed as Senior Grounds Person I and denied promotion or reinstatement. He also complains that he was

summarily discharged in March 2019 for sundry violations of NFTA rules (see Docket No. 1, Compl.).

Defendant NFTA moved to dismiss (Docket No. 5[1]) and, after the parties responded to that motion (Docket Nos. 9, 10), NFTA then filed its Motion for Summary Judgment (Docket No. 11[2]).

For reasons that follow, Defendant NFTA's initial Motion to Dismiss (Docket No. 5) is granted and the matter remanded to the Equal Employment Opportunity Commission ("EEOC") for further proceedings.  With this remand, this Court takes no position on Defendant's Motion for Summary Judgment (Docket No. 11) and terminates the Motion as moot.

## II.      Background

### A.  Facts Alleged in Complaint

For the Motion for Summary Judgment, Plaintiff admitted to most of the facts stated in NFTA's Statement (compare Docket No. 17, Pl. Statement with Docket No. 11, Def. Statement), but the parties dispute personnel issues and decisions made leading to Plaintiff's termination.  Plaintiff denies any violation of NFTA rules and policies (e.g., Docket No. 17, Pl. Statement ¶ 5).  This Court will cite to the Complaint (applicable for

---

[1] Defendant NFTA filed its attorney's Supporting Affidavit with exhibits and Memorandum of Law, Docket No. 5.  Plaintiff opposed by filing his Memorandum of Law, Docket No. 9.  NFTA replied with its Reply Memorandum of Law, Docket No. 10.

[2] In support of the Motion for Summary Judgment, NFTA submitted its Local Rule 56(2)(1) Statement of Undisputed Material Facts; NFTA's Attorney Affidavit, with exhibits; Memorandum of Law; and copies of cited cases available online, Docket No. 11.  Plaintiff opposed by submitting his Statement pursuant to Federal Rule of Civil Procedure 56; Plaintiff's counsel's Declaration with exhibits; Plaintiff's Memorandum of Law.  NFTA replied with its Reply Memorandum of Law, Docket No. 18.

the pending Motion to Dismiss) and NFTA's Statement of Material Facts (Docket No. 11) and note, when pertinent, Plaintiff's objections.

According to the Complaint in the present action, Plaintiff was an employee of the NFTA, ultimately working as Grounds Person I (Docket No. 1, Compl. ¶¶ 8-12; see Docket No. 11, Def. Statement ¶¶ 1-2).  While claiming he faithfully fulfilled his duties, Plaintiff was accused in June 2017 of violating a direct instruction regarding his movements as a Grounds Person I (Docket No. 1, Compl. ¶¶ 11, 12).  Plaintiff was removed as a Senior Grounds Person I and he appealed through a union grievance and prevailed (Docket No. 1, Compl. ¶ 13; Docket No. 11, Def. Statement ¶ 3; but cf. Docket No. 17, Pl. Statement ¶ 3 (denying allegations)).

In December 2017, Plaintiff reapplied for the Senior Grounds Person I position but was told that he needed a United States Customs and Border Patrol seal to obtain that position, a requirement he never needed before (Docket No. 1, Compl. ¶¶ 14-16).  Further, Plaintiff believed others in that title worked without that purported requirement (id. ¶ 17).  Plaintiff grieved the denial of a promotion, but that denial was upheld (id. ¶ 18).

Over the years Plaintiff claims to have filed internal complaints of discrimination, with the last filed on August 27, 2018 (id. ¶ 20), but Plaintiff did not attach any of these complaints, he did not specify what he complained about or how NFTA reacted to them.

On March 1, 2019, Plaintiff was terminated (id. ¶ 21; Docket No. 11, Def. Statement ¶ 6).  NFTA claimed that Plaintiff violated its rules by driving a vehicle on a runway at the Buffalo Niagara Falls International Airport without permission, a "runway incursion" that purportedly occurred on February 9, 2019 (Docket No. 1, Compl. ¶ 21).  Plaintiff denies the allegation, claiming that he followed the rules and cleared his drive with the control

tower personnel (id.).  Plaintiff knew of two other instances of Caucasian employees who committed runway incursions who were not disciplined (id.).  NFTA also alleged other violations in the discharge notice, including another runway incursion in December 2016 (id. ¶ 22).  Plaintiff again claims that he followed rules in 2016 and had clearance from the control tower in driving on the runway (id.).

NFTA also accused Plaintiff of missing a training class in a subject Plaintiff argues he already was trained (id. ¶ 23).  NFTA further accused Plaintiff of taking an NFTA vehicle for personal use on February 13, 2019 (id. ¶ 24).  Plaintiff contends he was driving to his grievance and believed this was an official use of a NFTA vehicle (id.).  Plaintiff also claims that he was accused of insubordination which he denied (id. ¶ 25).  NFTA also accused Plaintiff of improperly using his cellphone on at least three occasions, some he grieved, others he was not aware of as of the date of his termination (id. ¶¶ 26-28).  Plaintiff responds that supervisors used their cellphones with impunity while another African American employee also was sanctioned for cellphone use (id. ¶ 29).

Plaintiff served and filed his Complaint on November 20, 2019 (Docket No. 1).  He alleges that he exhausted his administrative remedies, filed a Charge of discrimination with the EEOC, and the EEOC issued a Dismissal and Notice of Rights on August 26, 2019 (id. ¶¶ 5-7); Plaintiff did not include either his Charge or the Dismissal with the Complaint.

This Complaint alleges two causes of action.  The First Cause of Action is unlawful termination, in violation of Title VII, contending that he was a member of a protected class as an African American, he was terminated based on allegation of improperly entering the runway despite White employees being allowed to do the same (id. ¶¶ 31-35).  The

4

Second Cause of Action alleges retaliation (id. ¶ 37) due to his numerous complaints of discrimination and that alleged acts of insubordination were sanctioned against him but allowed by White coworkers (id. ¶¶ 38-39).

B.  Defendant's Motions (Docket Nos. 5, 11)

On December 6, 2019, Defendant moved to dismiss, pursuant to Federal Rules 12(b)(1), (b)(6), (d) and/or 56 (if needed to convert into a summary judgment motion), arguing that the right to sue letter was premature (Docket No. 5).  Initially responses were due by December 23, 2019 (Docket No. 6).  NFTA moved for extension of time to reply and was joined by Plaintiff extending the response date (Docket No. 7), which was granted (Docket No. 8).  As amended, responses were due by January 6, 2020, and reply by January 13, 2020 (id.).  Plaintiff responded (Docket No. 9).  NFTA replied (Docket No. 10).

NFTA contends that, rather than amend the Complaint in Fabor, No. 18CV1463, Plaintiff filed another EEOC Charge and obtained a Right to Sue letter on August 26, 2019, and commenced the present action (Docket No. 5, Def. Memo. at 3).

This EEOC Charge (No. 525-2019-00901) was received by the EEOC on May 2, 2019 (id.).  The Complaint in the present action alleged that the Dismissal and Notice of Rights was dated August 26, 2019 (Docket No. 1, Compl. ¶¶ 6, 7; Docket No. 5, Def. Memo. at 3).  August 26 was 116 days from May 2 and NFTA argues this was too short for the 180-day period for a Notice of Right to Sue and thus it was issued prematurely (Docket No. 5, Def. Memo. at 4).

NFTA then moved for summary judgment (Docket No. 11), arguing (alternative to its pending Motion to Dismiss, id., Def. Memo. at 1) that Plaintiff failed to establish his race discrimination and retaliation claims (id. at 7-15).

NFTA asserts that, on March 1, 2020, arbitrator Thomas Rinaldo issued an Opinion and Award upholding Plaintiff's termination (Docket No. 11, Def. Statement ¶ 8). Plaintiff concedes Rinaldo made his Award but disputes whether Rinaldo found that Plaintiff's union failed to establish disparate treatment for the discipline imposed on Plaintiff (Docket No. 17, Pl. Statement ¶ 8).

Responses to the Motion for Summary Judgment initially were due April 14, 2020 (Docket No. 12). After motions for extension of time to respond (Docket Nos. 13, 15; see Docket No. 14), responses were due by May 5, 2020, and reply by May 26, 2020 (Docket No. 16). Plaintiff responded (Docket No. 17) and NFTA replied (Docket No. 18). Both motions were fully briefed, and oral argument was deemed unnecessary.

### III.   Discussion

Pending before this Court is both a Motion to Dismiss and a Motion for Summary Judgment. NFTA raises different grounds for both motions, this Court will consider the arguments in both motions.

#### 1.   Motion to Dismiss

Defendant has moved to dismiss on the grounds that the Complaint fails to state a claim for which relief can be granted, as well as lack of subject matter jurisdiction under Federal Rules of Civil Procedure 12(b)(6) and (b)(1) (Docket No. 5). Under Rule 12(b)(6), the Court cannot dismiss a Complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). As the Supreme Court

held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 554, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a Complaint must be dismissed pursuant to Rule 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face," <u>id.</u> at 570 (rejecting longstanding precedent of <u>Conley</u>, <u>supra</u>, 355 U.S. at 45-46).

To survive a motion to dismiss, the factual allegations in the Complaint "must be enough to raise a right to relief above the speculative level," <u>Twombly</u>, <u>supra</u>, 550 U.S. at 555; <u>Hicks</u>, <u>supra</u>, 2007 U.S. Dist. LEXIS 39163, at *5.  As reaffirmed by the Court in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009),

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [<u>Twombly</u>, <u>supra</u>, 550 U.S.] at 570 . . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. <u>Id.</u>, at 556 . . . .  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. <u>Ibid.</u>  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."' <u>Id.</u>, at 557 . . . (brackets omitted)."

<u>Iqbal</u>, <u>supra</u>, 556 U.S. at 678 (citations omitted).

A Rule 12(b)(6) motion is addressed to the face of the pleading.  The pleading is deemed to include any document attached to it as an exhibit, Fed. R. Civ. P. 10(c), or any document incorporated in it by reference.  <u>Goldman v. Belden</u>, 754 F.2d 1059 (2d Cir. 1985).  Incorporation of extra-pleading documents is at issue here.  This Court may consider documents the Court takes judicial notice of such as public records of the EEOC, <u>Colquitt v. Xerox Corp.</u>, No. 05CV6405, 2010 WL 3943734, at *1 n.2 (W.D.N.Y. Oct. 7, 2010) (Telesca, J.), <u>aff'd</u>, 546 F. App'x 26 (2d Cir. 2013) (summary Order).

In considering such a motion, the Court must accept as true all the well pleaded facts alleged in the Complaint.  <u>Bloor v. Carro, Spanbock, Londin, Rodman & Fass</u>,

754 F.2d 57 (2d Cir. 1985).  However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true.  New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions, 235 F. Supp. 2d 123 (N.D.N.Y. 2002).

Rule 12(b)(1) addresses subject matter jurisdiction of this Court and is a threshold issue for every federal case, 5B Charles A. Wright, Arthur R. Miller & A. Benjamin Spencer, Federal Practice and Procedure § 1350, at 23 (Civil 3d ed. Supp. 2021).  A Motion to Dismiss for lack of subject matter jurisdiction may be appropriate when a plaintiff fails to exhaust administrative remedies that have been established as a prerequisite to suing, 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350, at 70 (Civil 3d ed. 2004).

Where the movant denied or controverts a plaintiff's allegations of subject matter jurisdiction, then the movant has been deemed to be challenging the existence of subject matter jurisdiction and therefore plaintiff's allegations are not controlling, 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1363, at 108 (Civil 3d ed. 2004), citing, e.g., KVOS v. Associated Press, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183 (1936); McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).

2.      Summary Judgment

In both dispositive motions, NFTA seeks summary judgment as alternative relief (Docket No. 5, Notice of Motion; Docket No. 11).  If this Court converts the Motion to Dismiss under Rule 12(d), NFTA seeks consideration of the motion as one for summary judgment (Docket No. 5, Notice of Motion).

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).  A fact is "material" only if it "might affect the outcome of the suit under governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  A "genuine" dispute, in turn, exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party," id.  In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion," Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (internal quotations and citations omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper," Bryant v. Maffucci, 923 F.32d 979, 982 (2d Cir. 1991) (citation omitted).  Indeed "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper," Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82, 83 (2d Cir. 2004) (citation omitted).  The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial," Anderson, supra, 477 U.S. at 249.

"When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," Cordiano v. Metacon Gun Club, Inc.,

575 F.3d 199, 204 (2d Cir. 2009), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  "Where the moving party demonstrates 'the absence of a genuine issue of material fact,' the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact," Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (citation omitted) (quoting Celotex, supra, 477 U.S. at 323).  The party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis in original removed).

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(a).  The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the nonmovant.  Ford, supra, 316 F.3d at 354.

### 3.    Title VII

This Court recently addressed, in Black v. Buffalo Meat Service, Inc., No. 15CV49, 2021 WL 2043006, at *10-11 (W.D.N.Y. May 21, 2021) (Skretny, J.), the standards for employment discrimination and civil rights claims.  Plaintiff establishes employment

discrimination either by direct evidence, Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d. 523 (1985); Teamsters v. United States, 431 U.S. 324, 358 n.44, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), or by the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  For direct evidence of discrimination, Plaintiff must meet his "initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act," Teamsters, supra, 431 U.S. at 358.

Under McDonnell Douglas, Plaintiff bears the burden of demonstrating that race was a motivating factor in his adverse employment action, McDonnell Douglas, supra, 411 U.S. at 802-04.  He then must prove that an inference of discrimination where direct evidence is lacking leading to an application of the burden of proof shifting standard of McDonnell Douglas.  Under that standard, Plaintiff bears the burden of establishing a prima facie case of discrimination, Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-54, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)); McDonnell Douglas, supra, 411 U.S. at 802, by a preponderance of the evidence, Burdine, supra, 450 U.S. at 252-53.  "The burden of establishing a prima facie case of disparate treatment is not onerous," id. at 253, basically that Plaintiff applied for a position or is employed in a job he was qualified for but was rejected or otherwise hindered under circumstances that give rise to an inference of unlawful discrimination, id.  The prima facie case creates a presumption of unlawful discrimination by the Defendant employer, id.

If Plaintiff meets this initial burden, the burden shifts to Defendant to articulate some legitimate, nondiscriminatory reason for its action, id. at 254-56.  If that has been

met, the burden shifts back to Plaintiff to show, beyond the prima facie case, that Defendant's determination was the result of discrimination, id. at 256; see McDonnell Douglas, supra, 411 U.S. at 804-05, or that Defendant's stated reason was mere pretext. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff," Burdine, supra, 450 U.S. at 253.  As noted by the Burdine Court, the McDonnell Douglas evidentiary burden shifting "serves to bring the litigants and the court expeditiously and fairly to this ultimate question," id., or as later held in the TWA case, "that the 'plaintiff [has] his [or her] day in court despite the unavailability of direct evidence,'" TWA, supra, 469 U.S. at 121 (quoting Loeb v. Textron, Inc., 600 F.2d 1003, 1014 (1st Cir. 1979)) (alterations added).

For a Title VII claim, Plaintiff must file charges with the state equal employment agency within 300 days of the alleged discriminatory acts, 42 U.S.C. § 2000e-5(e)(1); Flaherty v. Metromail Corp., 235 F.3d 133, 136 n.1 (2d Cir. 2000).  Upon filing with the EEOC (or New York's Division of Human Rights) and if not resolved in conciliation by that agency, the agency must issue a Notice of the Right to Sue at the completion of its investigation and proceedings, 42 U.S.C. § 2000e-5(f)(1); Legnani v. Alitalia Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001).  Plaintiff needs dismissal of the administrative charge (or failure to act by the EEOC ) before filing suit, McPherson v. New York City Dep't of Educ., 457 F.3d 211, 213-14 (2d Cir. 2003); see Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003) (exhaustion is precondition to filing a Title VII action); Plaintiff's receipt of Right to Sue letter is prerequisite to Title VII suit, McPherson, supra, 457 F.3d at 213-14.  Absent this exhaustion, the subsequent Title VII action must be dismissed, Butts v. City of N.Y. Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir.

1993); see Criales v. American Airlines, Inc., 105 F.3d 93, 95 (2d Cir. 1997).  The purpose for exhaustion is to "give the administrative agency the opportunity to investigate, mediate, and take remedial action," Stewart v. United States Immigration & Naturalization Serv., 762 F.2d 193, 198 (2d Cir. 1985) (id. at 10-11).

Section 2000e-5(f) provides for suit

"If a charge filed with the Commission pursuant to subsection (b) is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d), whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice."

42 U.S.C. § 2000e-5(f)(1) (emphasis added).

EEOC regulations, however, allow the Commission to issue a Right to Sue letter prior to expiration of the 180-day period if "it is probable that the Commission will be unable to complete its administrative processing of the charge within [the period]," 29 C.F.R. § 1601.28(a)(2); Commodari v. Long Is. Univ., 89 F. Supp.2d 353, 381-82 (E.D.N.Y. 2000).

B.  Motion to Dismiss (Docket No. 5)

This Court first considers NFTA's Motion to Dismiss (Docket No. 5) and the timeliness of the notice of Right to Sue to commence this action.  If necessary, this Court

then will consider the substantive arguments in NFTA's Motion for Summary Judgment (Docket No. 11).

1.   Parties' Contentions for the Motion to Dismiss

NFTA argues that the notice of right to sue was premature (Docket No. 5, Def. Memo. at 3-4).   The Authority argues that the existence of <u>Fabor</u>, No. 18CV1463, precludes remand of this case to the EEOC for further proceedings (<u>id.</u>, Def. Atty. Aff. ¶ 9).   NFTA contends that Plaintiff is not entitled to avoid service problems in <u>Fabor</u>, No. 18CV1463, by filing a new action (<u>id.</u>, Def. Memo. at 5).   The Authority now claims that it was not served with the Complaint in the first action, NFTA thus anticipated that this first action was abandoned (<u>id.</u> at 5-6), months before its voluntary dismissal.   NFTA adds that all of Plaintiff's present claims could have been (but were not) raised in the <u>Fabor</u>, No. 18CV1463 action, hence the present action also should be dismissed on <u>res judicata</u> grounds (<u>id.</u> at 6-8).

Plaintiff responds that he commenced this action within 90 days of receiving the Notice of Right to Sue, even if the Notice was issued prematurely by the EEOC (Docket No. 9, Pl. Memo. at 2-4).   Title VII requires either issuance of the Right to Sue letter or expiration of 180 days where the EEOC took no action on the Charge, 42 U.S.C. § 2000e-5(f)(1); <u>Henschke v. New York Hosp.-Cornell Med. Ctr.</u>, 821 F. Supp. 166, 170 (S.D.N.Y. 1993); <u>but cf. id.</u> at 169-71 (holding that Right to Sue notice there was early).

He contends that the present action is for the termination in March 2019 that occurred after <u>Fabor</u>, No. 18CV1463 (<u>id.</u> at 4-5).   He denied that <u>res judicata</u> applies here to lead to dismissal of this action (<u>id.</u> at 5-6).

NFTA replies that this action cannot cure the defects in <u>Fabor</u>, No. 18CV1463, or effectively amend the former action (Docket No. 10, Def. Reply).

This Court notes that NFTA made these arguments before Plaintiff voluntarily dismissed <u>Fabor</u>, No. 18CV1463.

### 2.  Motion to Dismiss

#### a.  Early Right to Sue Notice

The text of 42 U.S.C. § 2000e-5 presents the alternatives of EEOC disposition (after completion of its conciliation and investigation) or the running of 180 days before a litigant can sue under Title VII; the Right to Sue letter is timely, <u>see</u> 29 C.F.R. § 1601.28(a)(2).  The 180-day period provides time for the Commission to complete the investigation and conciliation, <u>see</u> <u>True</u>, <u>supra</u>, 613 F. Supp. at 29.  If the Commission's dismissal was not due to the EEOC concluding its conciliation and investigation, then the Right to Sue letter was premature, <u>see</u> <u>id.</u> at 29-30.

NFTA contests the validity of the early (what it termed the premature, <u>see</u> Docket No. 5, Def. Memo. at 4) Right to Sue notice from the EEOC.  EEOC regulations allow the Commission to issue a Right to Sue letter prior to expiration of the 180-day period if "it is probable that the Commission will be unable to complete its administrative processing of the charge within [the period]," 29 C.F.R. § 1601.28(a)(2); <u>Commodari</u>, <u>supra</u>, 89 F. Supp.2d at 381-82.

Plaintiff cites examples of cases from district courts within the Second Circuit that are divided on whether a litigant could file a Title VII action upon an early or premature Right to Sue Letter (Docket No. 9, Pl. Memo. at 3, citing cases, as cited in <u>Gibb v. Tapestry, Inc.</u>, No. 18CV6888, 2018 WL 6329403, at *5 (S.D.N.Y. Dec. 3, 2018); <u>cf.</u>

Docket No. 5, Def. Memo. at 4 (citing <u>Gibb</u>)).  Some district courts, including Judge John Elfvin of this Court in <u>True v. New York State Department of Correctional Services</u>, 613 F. Supp. 27 (W.D.N.Y. 1984), held that an early Right to Sue is invalid, that a litigant had to wait 180 days after filing the EEOC Charge before he can sue, even absent further action by the EEOC.  Other district courts uphold an early Right to Sue letter, <u>e.g.</u>, <u>Commodari</u>, <u>supra</u>, 89 F. Supp. 2d at 380-83 (recognizing EEOC's backlog may preclude investigations and conciliations presumed within 180 days to justify early Right to Sue notices); <u>Figueira v. Black Entertainment Television</u>, 944 F. Supp.2d 299, 303-08 (S.D.N.Y. 1996) (Mukasey, J.) (in what one judge termed careful and thorough analysis,[3] held that issuance of early Right to Sue letter is not prohibited by Title VII and does not preclude jurisdiction over suit).

The Second Circuit, however, has yet to resolve this split, <u>see</u> <u>Hankins v. Lyght</u>, 441 F.3d 96, 101 (2d Cir. 2006); <u>Arroyo v. WestLB Admin., Inc.</u>, 213 F.3d 625, at *1 & n.1 (2d Cir. 2000) (summary Order) (need not reach complicated issue because appellant failed to raise it before the district court); <u>see also</u> <u>Mohamed v. NYU</u>, No. 14cv8373, 2015 WL 3387218, at *11, n.11 (S.D.N.Y. May 21, 2015) (Dolinger, Mag. J.) (Second Circuit has yet to decide issue).  Before the EEOC issued 29 C.F.R. § 1601.28, the Circuit Court held that the Commission could issue an early Right to Sue letter, <u>Weise v. Syracuse Univ.</u>, 522 F.2d 397, 412 (2d Cir. 1975).

In <u>True</u>, <u>supra</u>, 613 F. Supp. 27 (W.D.N.Y. 1984), the EEOC had not dismissed or determined plaintiff Elizabeth True's charge and granted an early Right to Sue letter at True's request, <u>id.</u> at 29.  Judge Elfvin held that the issuance of the Right to Sue letter

---

[3]<u>Kahn v. Objective Solutions, Int'l</u>, 86 F. Supp.2d 377, 379-80 (S.D.N.Y. 2000).

before 180 days from filing of the charges presented a jurisdictional deficiency requiring suspension and a remand of the Title VII claim to the EEOC, id.  There, Judge Elfvin reasoned that 29 C.F.R. § 1601.28 was inconsistent with 42 U.S.C. § 2000e-5(f)(1) and congressional intent that either dismissal by EEOC or lapse of 180 days is a prerequisite for suit, id. at 29, 30; see also People ex rel. Abrams v. Holiday Inns, Inc., 656 F. Supp. 675, 680 (W.D.N.Y. 1984) (Elfvin, J.).

In a Summary Order, the Second Circuit (while not deciding the validity of an early Right to Sue letter) held that an early Right to Sue letter is not jurisdictional in nature, Arroyo, supra, 213 F.3d 625, at *1; see Ibraheem v. Wackenhut Servs., Inc., 29 F. Supp.3d 196, 208 n.9 (E.D.N.Y. 2014); Mohamed, supra, 2015 WL 3387218, at *11 n.11. Thus, the jurisdictional bar found in True is no longer good law.

This Court also is not deciding the ultimate issue of whether the EEOC can issue an early Right to Sue letter or whether a litigant could commence a Title VII action based upon an early Right to Sue letter prior to the expiration of 180 days.  The issue here, however, is narrower, whether the EEOC here appropriately issued its early Right to Sue letter pursuant to its regulation.  For the Commission to issue such a Right to Sue letter it needs to find that it is unable to complete its processes within 180 days, 29 C.F.R. § 1601.28(a)(2); otherwise, the EEOC lacks the authority to issue the letter.

In Fabor's case, NFTA has not alleged that Plaintiff sought the EEOC to drop the Charges as occurred in True, supra, 613 F. Supp. at 29.  Neither side included the Right to Sue letter (cf. Docket No. 5, Def. Atty. Aff. ¶ 9), so the reason for ending Fabor's EEOC proceeding is unclear.  There is no record that the EEOC determined that it was unlikely

to complete its process within 180 days.  Plaintiff argues the EEOC dismissed of its own accord (Docket No. 9, Pl. Memo. at 3, 4) without stating the EEOC's rationale.

While the EEOC regulation gives the Commission the discretion to issue an early Right to Sue notice where it concludes further proceedings could not be completed within 180 days, the absence in this case of that notice and a declaration from the Commission that it was unable to complete its processing within 180 days is fatal to Plaintiff's claim. Plaintiff merely alleges general exhaustion of his administrative remedies and the issuance of the Right to Sue letter (Docket No. 1, Compl. ¶¶ 5, 7) and later claims that the EEOC issued the Right to Sue letter of its own accord (Docket No. 9, Pl. Memo. at 3, 4) without stating why the EEOC otherwise issued that Right to Sue letter early.  The Right to Sue notice itself might contain this information, but it is not part of this record.  As a Motion to Dismiss, this Court must accept as true the facts alleged in the Complaint and any documents attached thereto.  Without either the allegation (save the general assertion of exhaustion) or supporting documentation, there is no basis for accepting Plaintiff's contentions that the Right to Sue letter was timely.

Thus, Defendant NFTA's Motion to Dismiss (Docket No. 5) on the grounds that the Right to Sue letter was premature is granted.  The remedy Judge Elfvin applied in <u>True</u>, <u>supra</u>, 613 F. Supp. at 30, 33, was to hold True's Title VII claim in abeyance and remand the matter to the EEOC for further proceedings with the balance of the 180-day period (less the period from filing the EEOC charge to the filing of the lawsuit), <u>id.</u> at 30.  This Court adopts the remand to allow for further EEOC proceedings.  Obviously, 180 days has run since the filing of the Complaint, so it is unclear if time remains under the original

180 days or whether this action somehow equitably tolled the running of the administrative period for investigation and conciliation.

> b.  Appropriateness of Remand to EEOC

NFTA objects to remanding this matter to the EEOC because it is a veiled attempt to amend <u>Fabor</u>, No. 18CV1463, despite that case's service issues (Docket No. 5, Def. Memo. at 4-5; <u>id.</u>, Def. Atty. Aff. ¶ 10) and the existence of the 2018 action somehow precludes remand to the Commission.

Again, NFTA made this argument while <u>Fabor</u>, No. 18CV1463, was still an open case.  This objection is rendered moot by the voluntary dismissal of the earlier case without prejudice, <u>Fabor</u>, No. 18CV1463, Docket No. 5.  Without the 2018 case, there was nothing to prevent Plaintiff from filing a second EEOC charge (as he did here) and commencing this, second action alleging much of the same allegations as in <u>Fabor</u>, No. 18CV1463, provided the latter action is not barred by the statute of limitations (<u>cf.</u> Docket No. 10, Def. Reply at 2).  NFTA is not arguing that the present action is untimely under the statute of limitations; NFTA merely argues that the Right to Sue letter was premature.

Therefore, there is nothing to prevent the remand of Plaintiff's Title VII claims to the EEOC to continue its investigation and conciliation, especially the now dismissed 2018 action.

> c.  <u>Res Judicata</u> of <u>Fabor</u>, No. 18CV1463

Similarly, NFTA's <u>res judicata</u> arguments (Docket No. 5, Def. Memo. at 6-8) fail because of the lack of an initial judgment to trigger preclusion of the present action.  The Authority cites <u>Woods v. Dunlop Tire Corp.</u>, 972 F.2d 36, 37 (2d Cir. 1992) (<u>id.</u> at 6).  That

case is an appeal from Judge Elfvin entry of summary judgment for the employer, holding that Lucille Woods' Title VII action was barred by res judicata because she failed to raise that claim in a previous Labor Management Relations Act ("LMRA") case she commenced prior to the EEOC and NYSDHR determinations, id.  The Second Circuit held that plaintiff's first LMRA action was the same as his Title VII action.  Judge Roger Miner for the Second Circuit quoted the standard for res judicata that requires "a judgment upon the merits" to have preclusive effect on other actions, id. at 38, quoting Grubb v. Public Utils. Comm'n of Ohio, 281 U.S. 470, 479, 50 S.Ct. 374, 74 L.Ed. 972 (1930).  Woods thus had a prior judgment which had preclusive effect upon her subsequent Title VII action.  Furthermore, as Plaintiff contends to distinguish Woods (Docket No. 9, Pl. Memo. at 5-6), he could not initially have raised his termination claim in the first action because the firing postdated that action.

NFTA also cites Judge Richard Arcara's decision in Burton v. Niagara Frontier Transportation Authority, No. 11CV971, 2013 WL 3423754 (W.D.N.Y. July 8, 2013) (id.), without considering Judge Arcara's statement that the application of res judicata to "a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in the prior action," id. at *2 (citing EDP Medical Computer Sys., Inc. v. United States, 480 F.3d 621, 624 (2d Cir. 2007)).  Res judicata applied "(i) whether the previous action involved an adjudication on the merits; (ii) whether the previous action involved the same parties or those in privity with them; and (iii) whether the claims asserted in the subsequent action were, or could have been, raised in the prior action," id.

Thus, a judgment precludes a subsequent action relitigating a claim. Here, Plaintiff's <u>voluntary</u> dismissal without prejudice of <u>Fabor</u>, No. 18CV1463, Docket No. 5, was not a judgment, <u>cf.</u> <u>Chase Manhattan Bank, N.A. v. Celotex Corp.</u>, 56 F.3d 343, 345 (2d Cir. 1995) (a voluntary dismissal <u>with</u> prejudice is an adjudication on the merits for <u>res judicata</u>). <u>Res judicata</u> traditionally is not applicable to voluntary dismissal without prejudice, <u>Schupak v. Califano</u>, 454 F. Supp. 105, 113-14 (E.D.N.Y. 1978). Therefore, <u>res judicata</u> is not applicable and the present action is not dismissed on the purported preclusive effect of <u>Fabor</u>, No. 18CV1463.

### d.   Summary

Therefore, NTFA's first Motion to Dismiss (Docket No. 5) is granted but the matter is remanded to the EEOC for further administrative proceedings. Given this remand, and possible resolution of the merits by the parties before the EEOC, this Court declines consideration of the more substantive Motion for Summary Judgment (Docket No. 11).

### IV.   Conclusion

Defendant NFTA filed two dispositive motions raising distinct grounds for dismissing Plaintiff's discrimination claims. NFTA's first Motion to Dismiss (Docket No. 5) for an early and unexplained Right to Sue letter is granted and the matter remanded to the EEOC for further proceedings. Given the possibility of resolution before the Commission, this Court will not consider the NFTA's Motion for Summary Judgment (Docket No. 11) based upon allegations that Plaintiff failed to assert discrimination and retaliation. The latter motion is terminated as moot.

## V.     Orders

IT HEREBY IS ORDERED, that Defendant Niagara Frontier Transportation Authority ("NFTA") Motion to Dismiss (Docket No. 5) is GRANTED.

FURTHER, Plaintiff's Title VII claim is REMANDED to the EEOC for further proceedings consistent with this Decision and Order.

FURTHER, this Court terminates NFTA's Motion for Summary Judgment (Docket No. 11) as moot.

FURTHER, the Clerk of Court is DIRECTED to close this case.

SO ORDERED.


Dated:          September 7, 2021
                Buffalo, New York


                                        s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                       United States District Judge